UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

WANDA B.[1],                              )
                                          )
         Plaintiff,                       )
                                          )
v.                                        )        CIVIL NO. 1:20cv12
                                          )
ANDREW M. SAUL,                           )
Commissioner of Social Security,          )
                                          )
         Defendant.                       )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social

Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the

[Commissioner] shall file a certified copy of the transcript of the record including the evidence

upon which the findings and decision complained of are based.  The court shall have the power to

enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2.    The claimant has not engaged in substantial gainful activity since March 22, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: schizophrenia and borderline intellectual function (Exhibits 1F to 15F)(20 CFR 404. 1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations.  The claimant has no exertional limitations, but due to unsupported, but possible allegations for lightheadedness, she should not climb ladders, ropes of [sic] scaffolds nor work at unprotected heights or around dangerous machinery.  The claimant is also limited to simple routine work not done at production rate pace, and she retains the functional capacity to interact and react appropriately with supervisors, coworkers and the general public on an occasional basis.

6.    The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on October 7, 1963, and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from March 22, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 26- 35).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff  filed her opening brief on August 28, 2020.  On October 8, 2020 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on October 22, 2020. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature

4

of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff was born in October 1963 and was in the age category of "closely approaching advanced age" as of her amended alleged onset date; she switched age categories to "advanced age" two months prior to the ALJ's December 2018 decision (AR 61).

Plaintiff completed the 12th grade and has a history of placement in special education classes (AR 212, 312). She worked in the past as a dietary aid at Kingston Care Center and at an eyeglass lab at Eye Mart Express (AR 46-49, 56, 201-202, 212). Plaintiff has not worked since 2008 (AR 46, 205, 208).

Plaintiff testified at the hearing before ALJ Carlton in September 2018 (AR 41). She reported she was unable to work because she would hear voices and that she gets very lightheaded (AR 49). She took medication which controlled the voices, and it had been about a year since she had last heard them (AR 49). She still experienced some paranoia, even with medication, and thought people were watching her and looking into her window at home (AR 50). Along with paranoia, she experienced lightheadedness almost every day. *Id*. She thought this was caused by a medication she was on for high blood pressure and the medication Zyprexa (AR 50-51). She had been experiencing lightheadedness for about two years, but her doctor did not want to switch her medication unless her condition became a lot worse (AR 54). The lightheadedness could last all day, and sometimes it would last only half the day (AR 51).

Plaintiff last worked in 2008 when she was employed part-time at Kingston Healthcare Company (AR 46). Before working at Kingston, she worked at Eye Mart Express in the lab that manufactured eyeglasses (AR 47-48). She mostly stood in that job and did not do any heavy lifting (AR 49).

Plaintiff lived in an apartment with her 18-year-old son who helped with some

of the cleaning; it was hard for her to do chores around the house (AR 51-52). If she was out and

about, she walked very slowly if she became lightheaded. *Id*. She would lie down or take a nap to

get rid of the lightheadedness. *Id.* She was not able to sit or stand for a long period of time due to

lightheadedness and back pain (AR 53).

In June 2017 a state agency consultant with the Indiana Disability Determination Bureau

(DDB), Joshua Eskonen, D.O., reviewed Plaintiff's claim at the initial level of review and found

that Plaintiff's physical impairments were not severe ("NS") (AR 75). A state agency

psychological consultant, Kari Kennedy, Psy.D., considered Plaintiff's mental impairments under

listings 12.03 (Schizophrenia Spectrum and Other Psychotic Disorders) and 12.11

(Neurodevelopmental Disorders) (AR 75-76). Under the functional "B" criteria of the mental

impairment listings, Dr. Kennedy assessed moderate limitations in the ability to (1) understand,

remember, or apply information; and (2) concentrate, persist, and maintain pace (AR 76). As part

of the assessment of Plaintiff's mental RFC, Dr. Kennedy assessed moderate limitations in (1)

understanding, remembering, and carrying out detailed instructions; (2) maintaining attention and

concentration for extended periods; and (3) completing a normal workday and workweek without

interruptions from psychologically based symptoms and performing at a consistent pace without an

unreasonable number and length of rest periods (AR 77-78).

In October 2017, another state agency medical consultant, J.V. Corcoran, M.D., reviewed

the claim upon reconsideration, and affirmed the initial assessment of a non-severe physical

impairment (AR 100-101). Another state agency psychological consultant, Donna Unversaw,

Ph.D., reviewed the claim upon reconsideration and affirmed the initial assessment of Dr. Kennedy

6

(AR 102-106).

In June 2017 Leslie Predina, Ph.D. performed a mental examination and administered intelligence testing at the request of the Indiana DDB (AR 765-768). Dr. Predina observed that Plaintiff appeared to put forth good effort (AR 766). Her affect was flat, her ability to sustain concentration and persistence appeared impaired, she processed information slowly, and she appeared to have minor problems recalling information (AR 766). On the Wechsler Adult Intelligence Test (WAIS-IV), Plaintiff's level of cognitive functioning fell within the borderline range and well below most of her same-aged peers. *Id*. Verbal comprehension and full-scale IQ were in the 2nd percentile, and working memory was in the 4th percentile (AR 768).

Dr. Predina assessed borderline intellectual functioning and schizophrenia "per report." (AR767). She opined that Plaintiff should not be considered capable of managing her own finances and may struggle to get along with supervisors and coworkers when she has active symptoms of schizophrenia (AR 767). Dr. Predina concluded that Plaintiff would likely have problems recalling tasks on a job. *Id*. Her ability to sustain concentration and persistence appeared impaired, and she would likely have some problems being able to concentrate and persist on job responsibilities. *Id*.

A "Special Class Application and Enrollment Record" from Fort Wayne Community Schools reflects that Plaintiff obtained a score of 66 on Stanford Binet ("Binet") intelligence testing performed in 1978. (AR 317). An E.M.H. (Educable Mentally Handicap) program was recommended for Plaintiff.

Plaintiff was initially referred to Park Center by Parkview Behavioral Health in 2010 after being discharged from inpatient treatment following the onset of auditory hallucinations (AR 492). She had experienced the auditory hallucinations for about two months prior to seeking treatment

and was unable to identify an etiology for the onset of her symptoms. *Id*. She experienced voices that wanted to "frighten her" and talked to her everywhere she went, from the grocery store to church, and sometimes they talked to her through intercom systems. *Id*. She had minimal insight into her mental illness. *Id*.

Park Center performed an updated diagnostic assessment in October 2012. *Id*. Plaintiff was flat and guarded about disclosing personal information (AR 492). She was diagnosed with Psychotic Disorder and was taking the medication Zyprexa (AR 493, 498-500). At medication management follow-up appointments in 2013, 2014 and 2015 Plaintiff reported Zyprexa worked well though at times she appeared distractible, detached, and presented with a flat mood (AR 514-515, 536, 552-554, 563, 588, 601, 609, 617, 700, 772, 819).

In July 2015 Plaintiff disclosed that she had an episode a year ago when she heard voices; she admitted that she experienced stress from her husband at that time (AR 585). At that visit she agreed to decrease her dose of Zyprexa. *Id*. In April 2016 Plaintiff noted that reducing the dosage of the Zyprexa was not a problem, and the plan was to continue to reduce the dosage (AR 601). In July 2017 Zyprexa was working well, but she experienced some paranoia (AR 772). Plaintiff had also recently been diagnosed with diabetes mellitus and was on hypertension medication. On a test of recent recall at that time, Plaintiff could only recall one out of three items (AR 771). In October 2017 Plaintiff was experiencing increasing paranoia related to her neighbors and agreed to increase the dose of Zyprexa (AR 810). In April 2018 Plaintiff reported a decrease in paranoia with the increased dosage of Zyprexa (AR 824).

In support of remand, Plaintiff first argues that the Agency did not carry its burden of proof at Step Five because the vocational findings are founded upon legal error and not supported

8

by sustantial evidence. The validity of a Step Five finding based on testimony from a vocational expert is dependent upon an accurate RFC finding, because the Commissioner must produce reliable evidence of a significant number of jobs existing in the national economy for a person matching the claimant's vocational profile. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). In this case, Plaintiff argues that the vocational findings are deficient because they do not reflect a finding based on a legally sufficient and factually supported assessment of what Plaintiff is able to do on a sustained basis in a work setting. Plaintiff argues that the ALJ's RFC determination employs reasoning that is contrary to the law and is not based on substantial evidence and, thus, the resulting vocational finding is insufficient to support the ALJ's determination that there exists a significant number of jobs for an individual with Plaintiff's vocational profile.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 416.945 (a)(1). When determining an individual's RFC, the ALJ must consider the combined effects of all limitations that arise from medically determinable impairments based on the record as a whole, even those that would not be considered severe in isolation. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); 20 C.F.R. § 416.923. Similarly, to elicit reliable evidence from a vocational expert, an ALJ must pose hypothetical questions to the witness that include all limitations supported by the medical evidence in the record. *O'Connor-Spinner*, 627 F.3d at 620. Plaintiff argues that the RFC in this case does not include all of her credible limitations and does not adequately account for her inability to sustain the rigors of full-time employment.

Plaintiff contends that the ALJ's mental RFC and corresponding hypothetical to the VE

failed to capture Plaintiff's moderate limitations with concentration, persistence, pace and social interaction. In the hypothetical posed to the VE, which the ALJ ultimately adopted as the RFC finding, the ALJ determined that Plaintiff had the mental ability to (1) perform simple routine work not done at a production rate pace; and (2) interact and react appropriately with supervisors, coworkers and the general public on an occasional basis (AR 32, 56- 57). Plaintiff argues that the ALJ failed to reconcile his assessment of Plaintiff's functional capacity with the weight he afforded to the medical opinions of non-examining state agency psychological consultants, Drs. Kennedy and Unversaw, and the examining psychologist for SSA, Dr. Predina.

State agency non-examining psychological consultants, Drs. Kennedy and Unversaw, whose opinions the ALJ afforded "great weight," rated Plaintiff's abilities as moderately limited in the following areas: (1) understand, remember, and carryout detailed instructions (AR 77-78, 104); (2) maintain attention and concentration for extended periods (AR 78, 104); and (3) complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods (AR 78, 105).

Those consultants concluded that Plaintiff appeared capable of unskilled work and could understand, carry out, and remember simple instructions, make judgments commensurate with functions of unskilled work, respond appropriately to brief supervision and interactions with coworkers and work situations, and deal with changes in a routine work setting (AR 79, 106). Plaintiff, however, maintains that the ALJ failed to capture her moderate deficits in concentration, persistence, and pace in the RFC assessment and corresponding hypothetical to the VE. Plaintiff contends that the ALJ failed to explain how limiting Plaintiff to "simple routine work not done at a

10

production rate pace" accounted for the moderate limitations in (1) understanding remembering, and carrying-out detailed instructions; (2) maintaining attention and concentration for extended periods; and (3) completing a normal workday and workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods.

The ALJ's mental RFC assessment in the present case is merely a limitation to unskilled work with an undefined limitation of no "production rate pace." Plaintiff notes that this is precisely the type of canned, non-specific mental RFC assessment that the Seventh Circuit and district courts have repeatedly determined fails to capture a claimant's moderate limitations with concentration, persistence, or pace. *See, e.g., Hill v. Saul*, No. 3:18-CV-582 JD, 2019 U.S. Dist. LEXIS 142738, at *9-11 (N.D. Ind. Aug. 21, 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813-15 (7th Cir. 2015)); *see also DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). Plaintiff claims that, here, the error is compounded because the ALJ failed to define for the VE what is meant by no "production rate pace." *See id.*

Although the Seventh Circuit has held that an ALJ may rely on the state agency psychological consultant's narrative RFC assessment where the consultant adequately translates the checklist observations, Plaintiff points out that that did not happen in this case. *Johansen v. Barnhart*, 314 F.3d 283, 285-86 (7th Cir. 2002). The ALJ also omitted a discussion of the "check-box limitations" and failed to account for those in his hypothetical which is an error. *Long v. Berryhill*, 3:19-cv-00155-JD, 2020 U.S. Dis. LEXIS 76125,*11-12 (N.D. Ind. Apr. 20, 2020). Where a reviewer "checks a box" indicating a limitation, the ALJ needs to explain how that was accounted for in the RFC assessment, particularly where the ALJ relied on that opinion. *Yurt*, 758

11

F.3d at 858. In this case, neither the ALJ nor the state agency psychological consultants translated the moderate limitations in (1) maintaining attention, and concentration for extended periods; and (2) completing a normal workday and workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods in the RFC assessment. Limiting the complexity of a task does not address the individual's ability to continue to perform a task over an extended period of time. *Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift").

The Seventh Circuit has also rejected, as insufficient to account for deficiencies in concentration, persistence or pace, a limitation to "production rate pace" or similar limitations. *DeCamp*, 916 F.3d at 676 ("there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace"). Thus Plaintiff argues that, given the lack of explanation and "logical bridge," and in light of the Seventh Circuit's holdings, the imposed limitations "cannot be reflexively applied" to account for Plaintiff's difficulties.

As with the state agency medical consultant opinions, the ALJ gave "great weight" to Dr. Predina's assessment (Ex. 7F page 3) (AR 28). Plaintiff points out that Dr. Predina's psychological evaluation of Plaintiff with Wechsler Adult Intelligence (WAIS-IV) testing also supports greater deficits in concentration, persistence, and pace than the ALJ assessed (AR 768). Despite affording Dr. Predina's opinion "great weight," the ALJ failed to explain how the assessed

mental RFC accounted for Dr. Predina's opinion that Plaintiff would likely have problems recalling tasks on a job and sustaining concentration and persistence (AR 767).

Even though medications largely controlled Plaintiff's psychotic symptoms, she still had difficulty recalling recent information (remembering only 1 of 3 items), episodes of paranoia, and long-standing intellectual deficits (AR 317, 771-772, 809-810, 813-814, 817, 819, 822, 824). Moreover, evidence of stability alone does not suggest that Plaintiff could engage in substantial gainful activity. *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014). "Baseline level of stability" for Plaintiff who continued to experience episodic paranoia in the context of an intellectual disability, was not baseline normal and could have constituted baseline disability. *Antonio P. v. Saul*, 2:19-cv-375, 2020 U.S. Dist. LEXIS 68320, at *45 (N.D. Ind. Apr. 20, 2020).

Although the ALJ gave the medical opinion from Park Center "no weight," Plaintiff argues that the opinion from Sandra Nowlin, a social worker at Park Center, also supports a finding that Plaintiff has more mental limitations than the ALJ assessed (AR 31-32, 859). Plaintiff contends that the ALJ's rationale for finding this opinion was entitled to "no weight" was flawed and unsupported.

In *Burmester v. Berryhill*, 920 F.3d 507 (7th Cir. 2019), the Seventh Circuit rejected Plaintiff's argument that an ALJ failed to properly incorporate limitations in concentration, persistence, or pace in the hypothetical. *Id*. This case is unlike *Burmeste*r where the court noted that there was no "checkbox" indicating a moderate limitation, but only a "Statement of Work Capacity" indicating that concentrating at work would be manageable for Burmester. *See id.* at 512. Plaintiff argues that the present case is more like *DeCamp* because the state agency indicated that Plaintiff would be moderately limited in completing a normal workday and workweek without

13

interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

Plaintiff further argues that the vocational findings are also unsupported because the jobs the VE cited in response to the ALJ's hypothetical, which the ALJ relied upon to support his Step Five denial, all require a reasoning level of 2 according to the DOT's General Education Development (GED) Scale (AR 34, 56-57, 294, 296, 299, 304-305, 308, 310). A reasoning development level of 2 requires the ability to carry-out detailed instructions. Had the ALJ included in his hypothetical to the VE the limitations the state agency psychological consultants assessed, consistent with his affording "great weight to their opinions," and accounted for Plaintiff's limited ability to understand, remember, and carryout detailed instructions, the jobs the VE identified would be precluded.

Plaintiff also points out that the ALJ's RFC  assessment departs from and is less restrictive than the state agency psychological consultants' assessment despite the ALJ's finding that Plaintiff was more limited socially. The state agency psychological consultants assessed no limitations in interacting with others under the "B" criteria (AR 31, 76, 102), yet the ALJ assessed "moderate" limitation in "social functioning" due to "alleged report for paranoia" (AR 31). Despite finding Plaintiff more limited in social functioning/interacting with others, the ALJ's mental RFC is less restrictive than the state agency psychological consultants' assessment (AR 31, 32, 79, 106). The ALJ found that Plaintiff could "interact and react appropriately with supervisors, coworkers, and the general public on an occasional basis," but the state agency psychological consultants found that she was limited to only "brief supervision and interaction with coworkers" (AR 34, 79).

The ALJ's mental RFC assessment would require Plaintiff to interact with supervisors,

co-workers and the public on an occasional basis, which means for up to one-third of a workday.
This translates to interaction occurring for up to 138 minutes each day, excluding normal breaks of
30 minutes for lunch and two other 15 minute breaks (7 hours per day x 60 minutes x 1/3=138.6
minutes/day). Plaintiff thus concludes that the ALJ failed to address and reconcile the mental RFC
with the state agency psychological consultants' conclusion that Plaintiff was limited to only "brief
supervision and interaction with coworkers" (AR 79).

Plaintiff argues that there is a disconnect between the ALJ's finding that Plaintiff was
socially more limited in interacting with others than the state agency psychological consultants
assessed and his mental RFC requiring "occasional interaction" not only with supervisors and
coworkers but also with the general public. The ALJ's flawed rationale and mental residual
functional capacity is significant given the evidence that interactions with others, including
Plaintiff's ex-husband and her neighbors, triggered her paranoid episodes and voices, even when
medicated with Zyprexa (AR 585, 824). It is not apparent that the ALJ's assessment accounted for
the impact of the stress of full-time work with the level of social interaction required in the ALJ's
hypothetical on Plaintiff's symptoms, particularly when considered in conjunction with her
intellectual deficits and low scores on the WAIS-IV scales measuring verbal comprehension and
working memory (AR 765).

The ALJ's consideration of the evidence in assessing Plaintiff's RFC reflects that he
impermissibly parsed her schizophrenia and intellectual disability rather than considering the
combined impact of those impairments on her functioning and RFC. *See* 20 C.F.R. § 416.923(c).
This is evident given the ALJ's reliance on Plaintiff's past ability to work as a benchmark for
assessing her current mental abilities (AR 29). Plaintiff last worked in 2008 (AR 206-208) which

was before the onset of her psychotic break with auditory hallucinations and inpatient

hospitalization in 2010 for Psychotic Disorder/Schizophrenia (AR 492- 498). The fact that

treatment with Zyprexa was largely effective at controlling the symptoms of her

schizophrenia, including paranoia and auditory hallucination, does not mean Plaintiff is capable

of working 5 days a week, 8 hours a day in a competitive work setting given her impairments in

combination. *See* POMS DI 24510.057 Sustainability and the Residual Functional Capacity (RFC)

Assessment ("REMINDER: Inability to sustain a 40-hour workweek is an RFC finding."). ALJs

must consider a claimant's stamina and endurance in evaluating RFC, and a claimant's RFC must

reflect activities that the claimant can sustain for an 8-hour workday and a 5-day work week (with

normal breaks). *See* POMS DI 24510.005, DI 24510.057. Plaintiff points out that there is no

evidence that she ever had the capacity to work with the combination of her two serious mental

impairments.

      In response, the Commissioner acknowledges that the ALJ's RFC assessment is the

equivalent to a limitation to "unskilled work."  The Commissioner cites *Juzysta*, 2019 U.S. Dist.

LEXIS 27479 (2019), and *Palmer v. Saul*, 779 F. App'x 394, 398-400 (7th Cir. 2019), as support

for the assertion that a limitation to unskilled work is adequate to account for deficiencies in

concentration, persistence, or pace. In *Palme*r, Plaintiff argued that the ALJ did not account for

concentration problems related to pain and fatigue which stemmed mostly from pain-related

sleeping problems but not severe mental impairments; there was also a lack of medical opinion

evidence or specific testimony regarding Palmer's concentration, persistence, or pace difficulties.

*Id*.

      *Juzysta* involved concentration, persistence, or pace deficits where a learning disorder was

16

the only severe mental impairment, and there was a lack of evidence concerning other impairments until almost ten years after the date last insured. *Juzsta v. Berryhill*, No. 1:18–cv-4-TLS, 2019 WL 762509, at *8 (N.D. Ind. Feb. 21, 2019). In *Juzysta*, the ALJ's mental RFC was more restrictive than state agency psychological consultant assessment. In the present case, the ALJ acknowledged Plaintiff's severe mental impairments included not only a cognitive learning disorder (i.e. borderline intellectual functioning), but also schizophrenia which was diagnosed and treated through Park Center during the relevant period. Schizophrenia impacted more than just the skill level of work Plaintiff could perform. The state agency psychological consultant who reviewed Plaintiff's case also opined that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (AR 68, 104-105). Limiting the complexity of work tasks does not account for the limitations that state agency psychological consultants assessed and the restrictions Plaintiff experiences.

Contrary to the Commissioner's assertion, a "logical bridge" between the evidence and the mental RFC the ALJ assessed is lacking. The Commissioner has not refuted Plaintiff's argument that the ALJ committed a harmful legal error in failing to reconcile and explain how he accounted for the "checkbox" moderate limitations the state agency psychological consultants assessed and the RFC assessment. The ALJ failed to provide a reasoned explanation as to how the evidence translated into the ability to perform unskilled work with undefined pace restrictions.

The ALJ also afforded "great weight" to the medical opinions from Dr. Predina's examination but did not address the greater deficits she assigned (AR 28). Dr. Predina opined

Plaintiff would likely have problems not only with concentrating on job responsibilities but also in her ability to "persist" with job responsibilities (AR 767). Dr. Predina administered testing that resulted in a composite full-scale IQ (FSIQ) of 70 which is in 2nd percentile (AR 767-768). Likewise, treatment evidence from Park Center indicated that Zyprexa largely controlled Plaintiff's symptoms, but she still had episodes of paranoia and difficulty with recall; Park Center treatment records indicate Plaintiff's dosage of Zyprexa required changes to stabilize her symptoms.

Further, there is nothing about Plaintiff's daily living that would imply she could mentally sustain work activity five days a week, eight hours a day. Performing activities of daily living on a limited basis, on its own, does not show that a person can hold down a full-time job. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.").

In defense of the ALJ's RFC assessment, the Commissioner urges that the definition of "moderate" is "fair," and that Plaintiff did not have a "marked" limitation which is defined as "seriously limited." On SSA's five-point scale for rating the functional "B" criteria under the mental impairment listings, "moderate" falls between "mild" and "marked." *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E) and (F). While a "moderate" limitation does not support a presumptive finding of disability, it means that the limitation is more than mild and that the individual is more than "slightly limited" in a particular area.

Plaintiff has not argued that she met or equaled a mental impairment listing with "marked" limitations or that she is presumptively disabled based on her mental impairments. Rather, a

18

moderate limitation necessitates a corresponding limitation in the RFC assessment. Here, Plaintiff

has demonstrated that the ALJ's hypothetical to the VE and RFC assessment failed to account for

her moderate limitations in the "persistence" aspect of concentration, persistence, or pace. The

"'hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the

claimant's limitations supported by the medical record,' including even moderate limitations in

concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing

*Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). This error warrants remand because "when

the ALJ supplies a deficient basis for the VE to evaluate the claimant's impairments, this error

necessarily calls into doubt the VE's ensuing assessment of available jobs." *Id*. citing *DeCamp v.

Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).

The Commissioner offers a conclusory argument that the ALJ "reasonably accounted" for

Plaintiff's moderate limitation in social functioning by restricting her to occasional interaction with

supervisors, coworkers, and the public. The Commissioner's response largely ignores Plaintiff's

arguments. The ALJ failed to reconcile his finding that Plaintiff was more socially limited than the

state agency psychological consultants assessed with their assessment for only "brief supervision

and interaction with co-workers."

Likewise, Dr. Predina, whose opinion the ALJ gave "great weight," opined that Plaintiff

"may struggle to get along with her supervisors and coworkers when she has active symptoms of

her reported schizophrenia (AR 767). The ALJ's consideration of Plaintiff's social functioning is

lacking a logical bridge resulting in yet another deficiency in the RFC assessment. As a result, this

error necessarily calls into doubt the VE's testimony concerning the availability of jobs and

requires remand. *DeCamp*, 916 F.3d at 676.

Next, Plaintiff contests the ALJ's treatment of her dizziness. The ALJ acknowledged that Plaintiff testified that she experienced dizziness and lightheadedness as a side effect of her medication, but he concluded that the "allege[d] medication side-effects causing her to be dizzy and lightheaded" was "not noted in the record by the claimant" (AR 27). The ALJ was suspicious of and disbelieved Plaintiff's reports, yet there is evidence in the record that Plaintiff did report dizziness as a medication side effect (AR 849). In 2017 Plaintiff began taking Lisinopril for her hypertension, and she thought the medication caused dizziness/ lightheadedness (AR 84, 758). Dizziness, feeling unsteady, or having trouble keeping balance is also a side effect of Zyprexa.

Plaintiff was seen in the emergency room for dizziness on at least two occasions, and she had also presented to her family doctor due to dizziness (AR 324, 350-351, 396-397, 777-778). Plaintiff claims that the ALJ overlooked these records and otherwise used inaccurate, boilerplate medical records to impugn Plaintiff's character and credibility. Eye Care Center records specifically note that Plaintiff reported dizziness as a medication side effect. (AR 849). Dizziness is also checked as a symptom in other records from the Eye Center (AR 792- 793, 835). While dizziness is specifically noted in the Eye Center records, those same records indicate "denies" dizziness on the boilerplate symptom review (AR 792-793, 835-836, 849). Similarly, in May 2017 Plaintiff presented to Dr. Wuest, her family physician, and he assessed "Dizziness," yet his exam indicated "negative for dizziness" (AR 777-778). Dr. Wuest's plan was to "continue current meds" which is consistent with Plaintiff's reports that her doctors did not want to switch her medication (AR 54, 778). The record also contains emergency room visits for dizziness in 2013 and 2014, and the evidence also indicates that Plaintiff was prescribed Antivert/Meclizine due to her dizziness (AR 324, 350-351, 396-397, 409).

20

Despite finding a lack of support for Plaintiff's "allegations" of dizziness, the ALJ added a "precautionary accommodation" precluding work around unprotected heights, dangerous machinery, or climbing ladders, ropes, or scaffolds (AR 27). In this case those limitations are insignificant, and in general they have a minimal impact on the availability of work. *See*, e.g., SSR 85-15, 96-9p. The limitations the ALJ assessed do not address the dizziness or "lightheadedness" Plaintiff experiences which at times limited her ability to stand or walk and caused her to lie down or nap to obtain relief (AR 51-54). Plaintiff concludes that there is no assurance that the ALJ's RFC accounted for the limitations Plaintiff experiences due to her dizziness, rendering the ALJ's Step Five finding unsupported.

In response. the Commissioner asserts that Plaintiff's physicians did not want to change her medications despite her reports, implying that her medication side effects were not bad. However, this simply means that Plaintiff must try to cope with the medication side effects, not that she does not experience adverse side effects impacting her functioning.

As the ALJ erred in assessing the record with respect to Plaintiff's reports of dizziness, remand is warranted on this issue.

Next, Plaintiff argues that the ALJ erred in his consideration of the opinion evidence. The ALJ gave "little weight" to the opinion completed by Park Center social worker Sandra Nowlin, M.A. (AR 31-32, 859-861). Although Ms. Nowlin was not an "acceptable medical source" as defined in 20 C.F.R. § 416.902, SSA recognizes that opinions from medical sources, who are not technically deemed "acceptable medical sources," are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p. The factors in 20 C.F.R. § 416.927 that apply to the

21

weighing of opinions from acceptable medical sources also apply to the consideration of opinions from medical sources who are "not acceptable" medical sources. 20 C.F.R. § 404.927(f)(1).

In June 2018 Ms. Nowlin responded to a questionnaire regarding Plaintiff's functioning and indicated Plaintiff would be unable to meet competitive standards with regard to many of the basic mental abilities needed to do unskilled work (AR 859). She also indicated that Plaintiff would likely be absent from work more than four days per month (AR 860). In support of the assessment Ms. Nowlin cited Plaintiff's diagnosis of schizophrenia and her auditory hallucinations (AR 860).

The ALJ gave the opinion "no weight" because the treatment records failed to support that Ms. Nowlin had "clinical contact" with Plaintiff. (AR 31). The ALJ also indicated that Park Center records did not support that Plaintiff was unable to work due to hearing voices, and he found the opinion "simply inexplicable" (AR 32). Plaintiff argues that, contrary to the ALJ's claim, the record does support that Ms. Nowlin had "clinical contact" with Plaintiff. Although the contact is not extensive, Ms. Nowlin evaluated Plaintiff in December 2016 and performed the Adult Needs and Strength Assessment (ANSA) Reassessment (AR 678-681). Plaintiff points out that, as a provider with Park Center, Ms. Nowlin would have had access to the longitudinal treatment records from Park Center which included evidence of the auditory hallucination with persecutory voices (AR 492-499). Plaintiff states that Ms. Nowlin may have been reciting the history of Plaintiff's symptoms as the reason she could not work and accounted for the potential impact of the demands of work activity given the diagnosis of schizophrenia. Plaintiff argues that rather than taking such a dismissive approach to the opinion (and incorrectly finding that Ms. Nowlin had no contact with Plaintiff), the ALJ could have sought clarification concerning the opinion instead of

22

announcing in the decision his conclusion that the opinion is "simply inexplicable." *See Barnett*, 381 F.3d at 669; 20 C.F.R. 404.1512(b); *see also* HALLEX I-2-6-56 (An ALJ has a duty to ensure the administrative record is "fully and fairly developed" and will "make reasonable attempts to obtain evidence pertinent to the matters at issue.").

In response, the Commissioner argues that the ALJ properly considered the "outlier" opinion from Sandra Nowlin at Park Center. The Commissioner does not dispute that the ALJ was incorrect concerning an alleged lack of clinical contact with Plaintiff but asserts that the evidence, including the Park Center records, did not support Ms. Nowlin's opinion. While Plaintiff's symptoms improved with treatment at Park Center, the Commissioner has failed to acknowledge the impact of stress and demands of work activity on Plaintiff's schizophrenia. The Commissioner has also failed to respond to the argument that the ALJ could have sought clarification of the opinion to the extent he thought the opinion was to "say the least, simple inexplicable" (AR 32).

The Commissioner also argues that the ALJ properly gave the state agency psychological consultant opinions "great weight". As discussed above, the ALJ's RFC assessment also departs from the assessment of those consultants. Notably, the Commissioner does not mention that the ALJ also gave "great weight" to the opinions of the Dr. Predina, the consultative psychologist for SSA, who indicated that Plaintiff may struggle to get along with supervisors when she has active symptoms of her reported schizophrenia and an impaired ability to sustain concentration and persistence (AR 767). As there are errors in the ALJ's evaluation of the opinion evidence, remand is required.

Next, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's symptoms and limitations. An ALJ's symptom evaluation is reviewed for legal error and will be reversed if,

23

overall, the ALJ's factual conclusions are "patently wrong." *See, e.g., Cullinan v. Berryhill*, 878

F.3d 598, 604 (7th Cir. 2017); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An

ALJ's assessment is "patently wrong" when the findings lack adequate explanation, are not

"competently" explained, not supported by substantial evidence from the record as a whole, or are

otherwise factually or logically mistaken. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006);

*see also Cullinan*, 878 F.3d at 604 (credibility determination lacks support when it relies on

inferences that are not logically based on specific findings and evidence). *See also* 42 U.S.C. §

405(g) (findings of fact conclusive when supported by substantial evidence); 20 C.F.R. §

404.1529; SSR 16-3p. To permit the reviewing court to determine whether the decision is legally

sound and factually supported, the ALJ must support his finding with specific reasons, supported

by substantial evidence, and explained well enough for a reviewing court to conduct a thorough

review. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Pepper v. Colvin*, 712 F.3d 351, 367

(7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); Social Security

Ruling (SSR) 16-3p.

      In this case, the ALJ announced his "credibility" finding following his RFC assessment

using boilerplate that the 7th Circuit has repeatedly criticized:

> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be expected to
> cause the alleged symptoms; however the claimant's statements concerning the
> intensity, persistence, and limiting effects of these symptoms are not entirely
> consistent with the medical evidence and other evidence for the reasons explained
> in this decision.

(AR 33). The Seventh Circuit has routinely condemned similar language as "meaningless

boilerplate" and evidence of "backwards" application of the required analysis. *Bjornson v. Astrue*,

24

671 F.3d 640, 644-45 (7th Cir. 2012); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011);

*Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010). The ALJ's use of an incorrect "not

entirely consistent" standard to evaluate a claimant's statements concerning their impairments is

also itself inconsistent with the governing regulations. *Ralston v. Saul*, No. 3:18-cv-996-PPS,

2019 U.S. Dist. LEXIS 187014, at *6-11 (N.D. Ind. Oct. 29, 2019); *Minger v. Berryhill*, 307 F.

Supp. 3d 865, 872-73 (N.D. Ill. 2018); *Farley v. Berryhill*, 314 F. Supp. 3d 941, 946 (N.D. Ill.

2018). Social Security regulations explain how ALJ's are supposed to evaluate a claimant's

symptoms. "In determining whether you are disabled, we consider all your symptoms, including

pain, and the extent to which your symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence." 20 C.F.R. § 416.929(a).

 Plaintiff contends that, while the ALJ's legal errors in phrasing the legal requirement for his

evaluation of credibility and "backwards" credibility determination are not automatically grounds

for remand, the ALJ has failed to support his symptom testimony evaluation by substantial

evidence. Plaintiff further contends that the ALJ's consideration of Plaintiff's symptom testimony

lacks a logical bridge. As discussed above, the ALJ overlooked evidence supporting Plaintiff's

reports concerning the side effects of her medication and failed to meaningfully address those

symptoms or incorporate them into the RFC assessment. The ALJ also conflated stability with a

lack of disability and in so doing failed to consider the combined impact of Plaintiff's intellectual

disability and schizophrenia when considering the symptom testimony and assessing her RFC.

 In this case, the ALJ did not set forth the required symptom analysis, and by failing to

engage in the required analysis, he failed to make the type of findings required by SSA policy and

circuit precedent. This resulted in a flawed symptom evaluation and unsupported assessment of

Plaintiff's RFC.

In response, the Commissioner offers no reasonable explanation for the ALJ's departure from the regulatory standard for evaluating subjective symptoms and limitations. The ALJ's consideration of the evidence and opinions was fundamentally flawed and lacking a logical bridge. Accordingly, remand is warranted.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED, in accordance with the above Opinion.

Entered: November 4, 2020.

s/ William C.  Lee
William C. Lee, Judge
United States District Court